IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

WILLIAM PAUL SMITH                                                                       PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:19-CV-335-HTW-LGI

EAST MISSISSIPPI ELECTRIC POWER
ASSOCIATION                                                                              DEFENDANT

ORDER

Before this court is a *Motion for Summary Judgment*, **[Docket no. 40]**, submitted by Defendant East Mississippi Electric Power Association ("EMEPA"), under the auspices of Rule 56[1] of the Federal Rules of Civil Procedure. EMEPA asserts that Plaintiff William Paul Smith ("Plaintiff") has failed to present any factual or legal grounds, which would allow this case to proceed to a jury. The Plaintiff opposes EMEPA's motion, asserting that he has submitted enough evidence to survive summary judgment. [Docket no. 45]. This court, upon reviewing the record before it, and the applicable law, finds that this lawsuit features factual discrepancies, as well as significant questions about the mindset of various EMEPA representatives and employees; therefore, summary judgment is improper, and this lawsuit is now ripe for jury resolution.

---

[1] Rule 56 of the Federal Rules of Civil Procedure, which guides this Court in its consideration of whether to grant summary judgment, states in pertinent part:

> (b) A party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim.
>
> (c)(2) The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

1

## I.  BACKGROUND

Plaintiff filed his Complaint on May 10, 2019, alleging that EMEPA had terminated him in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA")[2]. [Docket no. 1]. On October 5, 2019, United States Magistrate Judge Linda Anderson granted Plaintiff's motion to amend his Complaint to add a claim pursuant to Mississippi Code Section 33-1-15[3], which, in spite of Mississippi's employment-at-will termination doctrine, seeks to hold liable the Defendant for willfully discriminating and discharging Plaintiff because of his military service. [Docket no. 25].

Filed on November 5, 2019, [Docket no. 27], Plaintiff's Amended Complaint alleges:

1. EMEPA wrongfully terminated him due to his military service record and upcoming mobilization;
2. EMEPA's employees harassed him because of his military service;
3. EMEPA failed to reinstate him to his current position after his first mobilization; and
4. EMEPA discriminated against him relative to promotions.

[Docket no. 27, pp. 2, 4-5].

Defendant EMEPA responds that it terminated Plaintiff not on the basis of any military affiliation, but because he was belligerent and insubordinate to his foreman, and that he refused a

---

[2] USERRA is governed by 38 U.S.C. §§ 4301-4335. Section 4311(a) bars employment discrimination on the basis of military service, stating: "A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C.A. § 4311 (West).

[3] Miss. Code Ann. § 33-1-5, which governs discrimination by private employers, states, in pertinent part: "[a]ny person…who...willfully deprives a member of any reserve component of the Armed Forces of the United States…of his employment…or discriminates in any of the conditions or emoluments of his employment because of his membership in such reserve component, or former membership in such service…shall be guilty of a misdemeanor and on conviction thereof, shall be punished by a fine not to exceed One Thousand Dollars ($1,000.00), or by imprisonment for not more than six (6) months, or both such fine and imprisonment."

direct instruction to ground an electrical line and, in so doing, put the safety of his crew at risk. [Docket no. 41, p. 1].

EMEPA asserts that it is also entitled to summary judgment on Plaintiff's Mississippi state law claim of wrongful termination by his employer because "the Mississippi Supreme Court has not recognized an exception to its long-standing at-will employment doctrine for such terminations, and Mississippi has never recognized an exception to the at-will employment [doctrine] on a basis for which federal law already provides a remedy." [Docket no. 41, p. 1].

    A.  <u>Plaintiff's Military and Employment History</u>

Plaintiff has been a member of the Mississippi Army National Guard since 1990. Plaintiff alleges that he has been assigned to the 289th Engineer Company located in Bruce, Mississippi since 2017. EMEPA hired Plaintiff on December 9, 1999, when he was still active with the 289th Engineer Company, to work as a "Groundman" at its Louisville, Mississippi location. Plaintiff says he was employed by EMEPA for more than seventeen (17) years before his termination on August 17, 2017. [See Docket nos. 27 and 40-1].

Throughout his employment with EMEPA, Plaintiff took multiple military service-related leaves of absence for training and deployment, including a deployment lasting one year, and another lasting over three years. [See Docket no. 40-1]. Plaintiff's EMEPA employment record reflects that, during his tenure at EMEPA, Plaintiff was on military-related leave for a total period of approximately five (5) years. [Docket no. 40-1]. Plaintiff's Amended Complaint further alleges the following:

> The plaintiff was mobilized three times for active military duty. In 2003, he was called to active duty for 16 months in Iraq. He returned to work for a short period and was then recalled to active duty at Camp Shelby, Mississippi in August 2006. He was later mobilized again in 2018 to serve in Kuwait. [Docket no. 27, p. 2, ¶ 11].

Upon his return to work from his first mobilization, EMEPA failed to reinstate him in his position in Louisville. Rather, EMEPA transferred him to the Meridian office which required him to travel about 120 miles a day. EMEPA violated USERRA by not reinstating him to his previous position. [Docket no. 27, p. 2, ¶ 13].

After the plaintiff filed an informal verbal administrative complaint under USERRA, EMEPA restored the plaintiff to his position in the Louisville office and reimbursed him for his mileage. [Docket no. 27, p. 2, ¶ 14].

EMEPA continued to harass the plaintiff about his service to his country. [Alan] Ward [plaintiff's supervisor], told the plaintiff 2 to 3 times a year that he would probably lose his job if he did not get out of the Guard. Ward made the statement both before and after he became the plaintiff's supervisor. [Docket no. 27, p.3, ¶ 15.]

[Plaintiff] was told by Brice Nester, [the head of the department of service and customer relations], that he was not eligible for certain positions or promotions because he was "gone too much on military duty." [Docket no. 27, p.3, ¶ 16].

[Plaintiff] was not allowed to take the test to qualify for a promotion to a journeyman lineman because he was told by Brice Nester…that "you know that they will not allow you to take the test because you are gone too much." [Docket no. 27, p.3, ¶ 17].

Plaintiff's Employment and Wage history, however, reflects that except for Plaintiff's first deployment, each time Plaintiff returned from military leave, EMEPA restored him immediately to his prior employment position. Plaintiff also received step increases, pay realignments, and annual pay increases. [Docket no. 40-1]. Over the years, Plaintiff's job title changed from "Groundman" to "Apprentice Lineman", "Lineman", "Serviceman 1", and "Serviceman SE[4]". [Docket no. 41-1]. Plaintiff's highest wage as a "Groundman" was $9.91

---

[4] The parties herein do not define "Serviceman SE"

per hour, and his wage at the time of termination, as a "Serviceman SE", was $28.70 per hour. [Docket no. 41-1].

    B.  *Plaintiff's Termination*

EMPEA claims it terminated Plaintiff's employment because of Plaintiff's insubordination and an escalating pattern of conflict between Plaintiff and his supervisor, Alan Ward ("Ward"). EMPEA points specifically to an incident, which occurred on July 5, 2017, as grounds for Plaintiff's termination. The parties concede that, on said date, Plaintiff had a heated exchange with supervisor Ward over work issues, namely, the proper way to ground an electrical wire. [Docket no. 40-9, p. 2]. Immediately thereafter, Plaintiff reported the incident to the Louisville, Mississippi office manager, Patricia Stokes ("Stokes"). [Docket nos. 40-1 and 40-9].

The following day, on July 6, 2017, Plaintiff claims he returned to work and apologized to Ward for having lost his temper, allegedly for the first time in his approximately eighteen years of employment. [Docket no. 27, p. 3, ¶ 21]. He explained to Ward that his father had just passed away, and he was still emotional and upset. [Docket no. 40-8]. Ward allegedly told Plaintiff that he would receive a write-up, or written reprimand, for the incident.

On the same day, July 6, 2017, Stokes issued Plaintiff a write-up for insubordination. [Docket nos. 40-4 and 40-15]. Plaintiff asserts that Stokes indicated they "would keep [the incident] in house", allegedly giving Plaintiff the impression that she would not send it to the Meridian, Mississippi home office. [Docket no. 27, p. 4]. Stokes, however, at some point thereafter, forwarded the write-up to EMEPA's Human Resources Director, Sherry Wallace ("Wallace") at the Meridian, Mississippi location. [Docket nos. 40-4 and 40-21].

5

On or about July 17, 2017, Wallace says he informed CEO Randy Carroll ("Carroll") of the July 6, 2017, write-up[5]. [Docket no. 40-3]. About the same time, says Wallace, he noticed that Stokes had used an outdated form to give Plaintiff the warning write-up. "[Carroll] told [Wallace] we needed to get the new form filled out, get it corrected, and get written statements from each person that was at the site." [Docket no. 40-3]. The statements from the other crew members, who observed the incident, were consistent with Plaintiff's account. [Docket no. 40-11].

On or about August 2, 2017, Plaintiff received a mobilization letter from his National Guard unit, advising him that his unit would be mobilized for another year of overseas duty, sometime in early 2018. [Docket no. 40-14]. Plaintiff alleges he gave the letter to his office manager, Stokes, the same day or the next day. [Docket no. 40-2].

On August 7, 2017, at Stokes's request, Plaintiff submitted a detailed statement describing the incident of July 5, 2017. [Docket no. 40-9]. Stokes transferred the information to the revised/current form, and Plaintiff signed the revised write-up on August 8, 2017. [*See* Docket no. 40-13; *compare* Docket no. 40-6].

Stokes, meanwhile, also sent Plaintiff's letter of mobilization to Wallace in Meridian, Mississippi, and Wallace dated the letter as "received" on August 10, 2017. [Docket nos. 40-4 and 40-21]. CEO Carroll alleges he was not made aware of the mobilization letter. [Docket no. 40-9]. Carroll alleges further that "deployment orders are not the type of information he would… typically be made aware of as EMEPA's CEO". [Docket no. 40-3].

---

[5] EMEPA alleges that Wallace was out of the office during the week of July 10-14, 2017, and that Carroll was out of the office on vacation from July 3-7, 2017. [Docket no. 40-3].

On August 14, 2017, Carroll terminated Plaintiff, citing the July 5, 2017, incident as the cause of termination. [Docket no. 40-15]. EMEPA alleges that Carroll's decision was in no way influenced by Plaintiff's impending deployment, as he was unaware that Plaintiff was going to be deployed. [Docket no. 40-9].

## II. JURISDICTION

USERRA provides employment protection to activated members of the military. USERRA is a federal statute; accordingly, this court has federal question jurisdiction over Plaintiff's claims pursuant to Title 28 U.S.C. § 1331[6] and, more specifically, under Title 38 U.S.C. § 4323(b)(3).[7] This court also has supplemental jurisdiction over Plaintiff's Mississippi state law claim against his employer under Title 28 U.S.C. § 1367[8].

## III. LEGAL STANDARD

In deciding a motion for summary judgment, this court must consider the dictates of Rule 56 of the Federal Rules of Civil Procedure.[9] Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[6] Section 1331 states: [t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[7] (3) In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action,
38 U.S.C.A. § 4323 (West).

[8] **(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties

[9] See Footnote 1. Rule 56 states further that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion. Fed. R. Civ. P. 56.

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*; *Copeland v. Nunan,* 250 F.3d 743 (5th Cir. 2001); see also *Wyatt v. Hunt Plywood Company, Inc.,* 297 F.3d 405, 408–09 (2002). When assessing whether a dispute to any material fact exists, all of the evidence in the record is considered, but the court refrains from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); instead, the court is to "draw all reasonable inferences in favor of the nonmoving party." *Id.*; *Wyatt*, 297 F.3d at 409. All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc*. 369 U.S. 654, 655 (1962).

A party cannot, however, defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *TIG Ins. Co. v. Sedgwick James of Wash.* 276 F.3d 754, 759 (5th Cir. 2002); *S.E.C. v. Recile,* 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. ANALYSIS

Section 4311 provides that a serviceperson "shall not be denied ... retention in employment, ... or any benefit of employment" because of the person's military service. 38 U.S.C. § 4311(a). An employer violates this prohibition when "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor" in an employment decision. *Bradberry v. Jefferson County, Tex.,* 732 F.3d 540, 545 (5th Cir. 2013) (quoting 38 U.S.C. § 4311(c)(1)). The employer, though, is not liable under USERRA if it "can

prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." *Id*.

The plaintiff, under the clear language of § 4311, bears the initial burden to prove that military status was a motivating factor in the employer's actions. 38 U.S.C. § 4311(c)(1). The phrase "motivating factor" is not defined in USERRA; however, the United States Supreme Court has explained that "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Staub v. Proctor Hosp.,* 562 U.S., 131 S.D. 1186, 1194, 179 L.Ed.2d 144 (2011) (footnotes omitted).

USERRA shifts the burden next to the employer to prove by a preponderance of the evidence that the employee would been terminated even if he was not in the military. 38 U.S.C. § 4311(c)(1). The Department of Labor has elaborated on this provision: "If the individual succeeds in proving that the status or activity protected by USERRA was one of the reasons the employer took action against him or her, the employer has the burden to prove the affirmative defense that it would have taken the action anyway." 20 C.F.R. § 1002.22.

This court finds that in the present case, the issue of motivation remains an unresolved fact question. EMEPA claims Carroll began Plaintiff's disciplinary process on or about July 17, 2017; however, EMEPA has offered no proof that Carroll made the decision to terminate Plaintiff prior to Wallace's receipt of Plaintiff's mobilization letter on August 10, 2017.

This court notes that, although Carroll asserts he was unaware of Plaintiff's pending deployment before the termination meeting on August 14, 2017, a jury is not required to believe the statements of interested witnesses. *Simmons v. Pacific Bells*, *LLC.*, 787 Fed. Appx. 837, 842-43 (5th Cir. 2019). A jury could find that because Wallace and Carroll worked in the same office,

9

and had ample opportunity to converse, Plaintiff's letter of mobilization could have been brought to Carroll's attention on August 10, 2017.

Considering Plaintiff's allegations of harassment and the temporal proximity of Plaintiff's mobilization letter to his termination date, a jury might find that Plaintiff's military status influenced EMEPA's decision to terminate Plaintiff.  Although EMEPA argues it would have terminated Plaintiff for his history of insubordination and proclivity to conflict, the record before this court does not clearly support this argument.

This court now turns to Plaintiff's cause of action under Mississippi Code § 13-5-35[10]. "Mississippi rigidly follows the common law employment-at-will principle, that is, 'a contract for employment for an indefinite period may be terminated at the will of ether party, whether the discharge is for any reason or no reason at all.'" *Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 218 (Miss. 2015) (internal quotations omitted). Mississippi has followed the employment-at-will doctrine since 1858. *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 606 (Miss. 1993) (citing *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987)).

The Mississippi Supreme Court has recognized only a few narrow exceptions to the employment-at-will doctrine. In *McArn v. Allied Bruce-Terminix*, the Supreme Court recognized two situations in which an employee is not barred by the common law rule of employment at will from bringing a tort against the employer: (1) an employee who refuses to participate in an illegal act; and (2) an employee who is discharged for reporting illegal acts of his employer. *McArn*, 626 So. 2d at 607.

---

[10] See Footnote 3.

Subsequently, in *Swindol v. Aurora Flight Scis. Corp.*, 194 So. 3d 847 (Miss. 2016), the Supreme Court recognized that an employee may bring a claim for discharge motivated by reasons that the state legislature has declared through express legislative action are "legally impermissible." *Id.* at 854 (recognizing claim for wrongful termination in violation of company policy against storing a gun in a locked vehicle in the company parking lot that itself violated a state statute expressly prohibiting employers from enacting such a policy).

Most recently, in *Simmons v. Pac. Bells, L.L.C.*,, the United States Court of Appeals for the Fifth Circuit took an *Erie*[11] guess that the Mississippi Supreme Court would extend *Swindol* to recognize a wrongful termination claim alleging discharge for jury service and refusal to lie to avoid jury service, in light of Miss. Code § 13-5-35's prohibition against an employer interfering with an employee's jury service[12].

Plaintiff's Amended Complaint in the case *sub judice* seeks to establish another exception, similar to the Court's finding in *Simmons*, for Mississippi's at-will doctrine: namely, a private cause of action against an employer when the employer discharges an employee due to the employee's military service. This court will return to this issue if and when this case goes to trial.

---

[11] *Erie Railroad Co., v. Tompkins*, 304 U.S. 64 (1938) mandates that a federal court called upon to resolve a dispute not directly implicating a federal question must apply the substantive law of the forum State.

[12] Section 13-5-35(1) states that "it shall be unlawful for any employer…to persuade or attempt to persuade any juror to avoid jury service; to intimidate or to threaten any juror in that respect; or to remove or otherwise subject an employee to adverse employment action as a result of jury service."

## V. CONCLUSION

This court, after considering the parties' submissions, is persuaded that genuine disputes of material facts permeate this lawsuit. Accordingly, Defendant EMEPA's *Motion for Summary Judgment* **[Docket no. 40]** hereby is **DENIED** *in toto*. By separate document, this court shall set this matter for trial.

SO ORDERED, this the 8th day of April, 2021.

/s/HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE